**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| COSMETIQUE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| VALUECLICK, INC. AND WEB | ) | |
| MARKETING HOLDINGS, INC. D/B/A | ) | **JURY TRIAL DEMANDED** |
| WEB CLIENTS, INC., | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

Plaintiff Cosmetique, Inc. ("Cosmetique"), by and through its attorneys, allege the following facts and claims upon personal knowledge as to matters relating to themselves, and as to all other matters upon information and belief, as follows:

## PARTIES

1.      Cosmetique is an Illinois corporation with its principal place of business located in Vernon Hills, Illinois.  Founded in 1974, Cosmetique is a national direct marketing beauty club, offering its members specially-priced beauty collections that feature a variety of cosmetics and fragrances.  Members join Cosmetique through introductory offers in national media. Cosmetique members receive beauty collections monthly, each of which contains full-size quality cosmetics, treatment products and fragrances, plus a detailed description of each product and helpful hints on using them.

2.      Defendant ValueClick, Inc. ("ValueClick") is a Delaware corporation with its corporate headquarters located at 30699 Russell Ranch Road, Suite 250, Westlake Village, California 91362.  ValueClick (VCLK) is publicly traded on the NASDAQ Global Stock Select

Market.  According to the Form 10-K ValueClick filed with the U.S. Securities and Exchange Commission on February 27, 2009, ValueClick is one of the world's largest online marketing services companies.  ValueClick sells targeted and measurable online advertising campaigns and programs for advertisers and advertising agency customers, generating qualified customer leads, online sales and increased brand recognition on their behalf with large numbers of online consumers.

   3.  Defendant Web Marketing Holdings, Inc. d/b/a Web Clients, Inc. ("Webclients") is, upon information and belief, a Delaware corporation with its corporate headquarters located at 2201 North Front Street, Harrisburg, Pennsylvania 17110.  In June 2005, Webclients became a subsidiary of ValueClick.  Upon information and belief, Webclients provides client companies online advertising options through its network of more than 1,500 affiliated web sites. Webclients offers pay-for performance and campaign tracking to clients that choose to advertise on its Websponsors network.  Webclients also offers lead generation services using its database of opt-in e-mail addresses and provides search engine optimization services.  Webclients is focused primarily on helping advertisers generate leads using the cost-per-acquisition and cost-per-lead pricing models.

## JURISDICTION AND VENUE

   4.  This Court has jurisdiction over this action pursuant to 28.U.S.C. § 1332 as there exists complete diversity between the plaintiff and defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

   5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the defendants do business in this district and a substantial part of the events giving rise to this matter occurred in this district.

## FACTUAL ALLEGATIONS

### A.    Cosmetique And The Cosmetique Beauty Club

6.    Cosmetique is a direct marketer of cosmetics on a continuity basis.  It operates like a "book of the month club."  Prospects become members by joining the Cosmetique Beauty Club through a variety of marketing channels, such as package inserts and the Internet.  The Cosmetique Beauty Club offers its members specially-priced beauty collections that feature a variety of cosmetics and fragrances.

7.    When a woman joins the Cosmetique Beauty Club, she completes a color and skin tone profile so that each collection, or kit, matches the colors she wants to receive.  Each kit contains 4-7 products, and Cosmetique mails a kit on a monthly basis provided the member continues to pay for the preceding kit.  There is no minimum purchase, there are full return privileges on any collection and a member can cancel at any time.  All products and packaging are designed and developed at Cosmetique's Vernon Hills, Illinois location.  The success of Cosmetique's business model is premised on its ability to attract "continuity members" who will purchase products on a continual, monthly basis.

### B.    Cosmetique Contracts With SendTec, Inc. To Acquire New Cosmetique Beauty Club Members

8.    Beginning in 2002, Cosmetique contracted with SendTec, Inc. ("SendTec") to acquire new "continuity members" over the Internet.  On or about June 15, 2009, SendTec filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court, Middle District of Florida.

9.    SendTec was an advertising agency that specialized in interactive advertising, *e.g.*, Internet, e-mail, and banner ads.  To this end, Cosmetique entered into various advertising contracts with SendTec, including the initial contract entered into in 2002, a contract entered into

in 2004 (which was later amended in 2005), and the Continuity Internet Lead Generation

Marketing Agreement ("CILGMA") entered into on September 18, 2006.

10.     The CILGMA required that SendTec obtain Cosmetique's prior written approval

before presenting any advertisements regarding Cosmetique to the public.  Paragraph 1(f) of the

CILGMA required that:

> SendTec must obtain prior written (including email) approval from Cosmetique
> before any advertising programs, including landing/offer pages, web banners,
> HTML, text emails, co-registration copy, etc., and revisions or enhancements to
> any advertising programs are presented to the public.

11.     Paragraph 1(d) of the CILGMA provided:

> Cosmetique will provide SendTec with existing creative assets, including photos,
> artwork, etc. ("the Creative") that SendTec is to use to develop the creative for the
> Cosmetique advertising programs.

12.     Paragraph 5(a) of the CILGMA granted SendTec the license to use Cosmetique's

trademarks, but required that "Cosmetique shall pre-approve any use of the Cosmetique Marks

by SendTec."

13.     Paragraph 5(b) of the CILGMA provided:

> SendTec agrees not to place or cause the placement of any Cosmetique
> advertising creative on any web site that will or is likely to damage the name,
> reputation, value or image of Cosmetique . . . .   SendTec will remove any
> Cosmetique advertising . . . from any site at Cosmetique's request.

14.     In Paragraph 5(c) of the CILGMA, SendTec agreed to comply with all Federal

and State laws.  In particular, Paragraph 5(c) provided:

> SendTec agrees to comply with all Federal and State laws and regulations
> applicable to electronic advertising, including without limitation, all those
> promulgated by or under the Federal Trade Commission and state equivalents.

15.     Paragraph 9 of the CILGMA provided:

> Both parties agree and represent that their activities will be in compliance with all
> federal, state and local laws governing their activities, including but not limited to
> laws governing advertising and privacy.

3

16.     Paragraphs 1(d), 1(f) 5(a), 5(b), 5(c) and 9 were meant, *inter alia*, to prevent advertising Cosmetique in any manner that could potentially damage Cosmetique's reputation with existing members or potential customers, and also to allow Cosmetique to ensure that the advertisements placed by SendTec would be the type of advertisement that would attract repeat customers to the Cosmetique Beauty Club, *i.e.*, customers (women, not men) who would be likely to purchase Cosmetique beauty kits on a monthly basis.

### C.     Valueclick and Webclients' Advertising Program For Cosmetique

17.     SendTec used third-party Internet publishers, such as Webclients, to place Cosmetique advertisements on the Internet.  These third-party publishers, including Webclients, owned multiple websites.  SendTec and these third-party Internet publishers, including Webclients, proceeded to place advertisements on these third-party websites, including websites owned by Webclients, without obtaining Cosmetique's prior written approval.

18.     SendTec refused to fully disclose to Cosmetique the websites where Cosmetique advertisements were placed, and it was not possible for Cosmetique to independently identify all of the websites on which its advertisements were placed.

19.     Although Cosmetique understood that SendTec had been placing Cosmetique advertisements on various websites that offered consumers incentive "free" reward gifts, Cosmetique never agreed or provided approval for ValueClick's WebClients to advertise Cosmetique as a featured "sponsor" of various incentive "free" items on such websites.

20.     Examples of unapproved advertisements in which Cosmetique was identified as a featured "sponsor" appeared on www.consumersavingcenter.com and www.roundtriptickets4free.com.  Copies of these advertisements are attached hereto as Exhibits A and B.

21.     In order to qualify for the "free" reward gift, the consumer had to pay for a certain number of goods or services.  Cosmetique's offer was one of many goods or services that consumers could purchase to qualify for the "free" reward gift.

22.     Unknown to the consumer, the "free" reward gifts required the purchase of multiple "offers" contained in different categories, also known as "tiers."  The tiers of offers that qualified the consumer for the "free" reward gift consisted of three categories: Silver, Gold and Platinum.  In each tier, there were numerous offers, including Cosmetique offers.  To qualify for the "free" reward gift, the consumer had to "participate in" multiple offers.

23.     A  Cosmetique  advertisement  placed  by  WebClients  on www.consumersavingcenter.com reflects that to qualify for the "free" laptop reward gift, a consumer had to purchase at least two "Silver" offers, one of which included joining the Cosmetique Beauty Club and purchasing a Cosmetique beauty kit.  A consumer would also have to purchase at least one other offer from the seven pages worth of "offers" identified in the advertisement.

24.     In some instances, a consumer stopped trying to qualify for the "free" reward gift because the consumer subsequently realized the "free" reward gift was not really "free," *i.e.*, not worth the time involved, the cost involved, or both.

25.     Because the consumer did not "participate in" (*i.e.*, pay money for a good or service) all the offers required to obtain the "free" reward gift, the consumer did not receive the "free" reward gift.

26.     Even though the consumer had abandoned the attempt to obtain the "free" reward gift, the consumer was unable to cancel the prior purchases at that time.  In other words, even though the consumer had abandoned the effort to try to qualify for the "free" reward gift

advertised on the website, that did not mean that the consumer's prior purchases made on the website in the attempt to qualify for the "free" reward gift were automatically cancelled.  Instead, if the consumer wanted to cancel prior purchases, the consumer had to contact directly the companies whose products the consumer did not want.

27.     In cases where a consumer had tried to qualify for a "free" reward gift by joining the Cosmetique Beauty Club and purchasing a Cosmetique beauty kit, and where the consumer had subsequently abandoned the attempt to qualify for the "free" reward gift, that consumer frequently also, returned the Cosmetique beauty kit, cancelled the Cosmetique Beauty Club membership, and received a refund from Cosmetique.

28.     Upon information and belief, Bullseye Media, Inc. owns or owned www.consumersavingcenter.com and www.roundtriptickets4free.com.   Upon information and belief, Bullseye Media, Inc. is or was a subsidiary of Webclients.

29.     Cosmetique never agreed to, or approved of, advertising Cosmetique as a featured "sponsor" on any such websites whereby Cosmetique appeared on the first page of the website and was promoted to consumers as providing a "sponsor offer" which could qualify a consumer for a "limited time bonus offer" (such as those in the www.consumersavingcenter.com and www.roundtriptickets4free.com advertisements).

30.     Likewise, Cosmetique never agreed to sponsor a "free" Microsoft Office product, as advertised on www.roundtriptickets4free.com and never agreed to sponsor a "free" "$25 Visa gift card" as advertised on www.consumersavingcenter.com.

31.     Valueclick and Webclients knew that the use of websites which offered "free" products unrelated to a targeted cosmetic clientele would not generate continuity customers for Cosmetique.  Valueclick and Webclients knew that an advertising campaign for Cosmetique in

which Cosmetique was identified as a featured "sponsor" of websites which offered consumers "free" gifts would not provide Cosmetique with exposure to consumers who would be likely to become continuity members of Cosmetique.  Valueclick and Webclients knew that advertising Cosmetique in this manner would not generate continuity orders for Cosmetique, but would generate fees and clicks for Valueclick and Webclients.

32.     The Cosmetique advertisements on Valueclick and Webclients' websites that falsely or misleadingly promised consumers "free" reward gifts violated advertising and consumer protection laws.

33.     Cosmetique incurred significant financial damages, including Cosmetique's payment of a media fee for a consumer's purchase in response to the Cosmetique advertisement placed ValueClick and/or Webclients' websites that misleadingly led consumers to believe they would receive a "free" reward gift without adequately disclosing that in order to obtain the "free" merchandise a consumer would first have to incur expenses or other obligations.

34.     Damages to Cosmetique also include various additional costs and expenses, including loss of the product and packaging, labor to assemble the beauty kit, credit card processing fees, refunds, and outgoing and return postage.  These costs and expenses were incurred in connection with ValueClick and Webclients' advertisements promoting "free" reward gifts to consumers, which the consumer ultimately returned to Cosmetique because the consumer had only wanted the "free" gift that he/she often did not qualify for, and not the Cosmetique beauty kit.

**D.** **Webclients Advertises Cosmetique In A Non-Sponsor Position For A Limited Time**

35.     In or around December 2008, Cosmetique engaged ValueClick and WebClients on a limited basis to advertise the Cosmetique Beauty Club.  The advertising campaign did not include Cosmetique in a prime sponsor position of an incentivized advertisement.

36.     On or around June 16, 2009, because orders from ValueClick and Webclients' advertising were performing poorly, Cosmetique terminated the ValueClick and Webclients' advertising program.

**E.** **Valueclick Sued by the Federal Trade Commission**

37.     The Federal Trade Commission ("FTC") conducted an extensive investigation of websites that offered "free" reward gifts to consumers.  On March 13, 2008, the FTC filed a civil complaint against ValueClick and several of its related entities.  A copy of the FTC complaint is attached hereto as Exhibit C.  The FTC complaint alleged that advertisements appearing on ValueClick's websites did not clearly and conspicuously disclose that to obtain a "free" gift a consumer had to incur expenses.  In particular, the FTC alleged that Valueclick used Internet websites that misleadingly offered consumers incentive "free" merchandise without adequately disclosing to consumers that in order to obtain the "free" merchandise a consumer would first have to incur expenses or other obligations.

38.     On March 17, 2008, Valueclick settled with the FTC by entering into a Stipulated Final Judgment requiring, among other things, the payment of $2.9 million in civil penalties and clear and conspicuous disclosures in connection with lead generation advertisements..

<u>COUNT I</u>
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD
AND DECEPTIVE BUSINESS PRACTICES ACT ( 815 ILCS 505/1 *et seq.*)**

39.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 – 38 above.

40.     At all relevant times, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, was in effect.   The "Consumer Fraud Act" forbids, *inter alia*, unfair or deceptive practices.   Paragraph 505/2 of the Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

41.     The Consumer Fraud Act, 815 ILCS 505/2P, provides:

> It is unlawful for any person to promote or advertise any business, product . . . by means of offering prizes, gifts, or gratuities to any consumer, unless all material terms and conditions relating to the offer are clearly and conspicuously disclosed at the outset of the offer so as to leave no reasonable probability that the offering might be misunderstood.

42.     The Consumer Fraud Act further provides, in 815 ILCS 505/10(a), as follows:

> Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person.   The court, in its discretion may award actual economic damages or any other relief which the court deems proper.

43.     Defendants' wrongful conduct involved actions and trade practices addressed to the market generally or otherwise implicated consumer protection concerns.

44. Pursuant to the Consumer Fraud State Act, Valueclick and Webclients had a statutory duty to refrain from false or deceptive acts or practices in advertising Cosmetique and the Cosmetique Beauty Club.

45. As described herein, Valueclick and Webclients' false and misleading advertising practices, which occurred in the course of conduct involving trade or commerce, are unlawful. The advertising program implemented by Valueclick and Webclients promoted and/or advertised Cosmetique by means offering free prizes and gifts to consumers, but did not disclose all material terms and conditions relating to the offer in violation of the Consumer Fraud Act.

46. ValueClick and Webclients' advertising program caused a likelihood of confusion or misunderstanding as to the sponsorship of the "free" gifts by misleadingly representing, or suggesting, to consumers that Cosmetique was a "sponsor" of the "free" gift when, in fact, Cosmetique was not a sponsor, and had never agreed to sponsor any such "free" gift.

47. Valueclick and Webclients engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Cosmetique.

48. Valueclick and Webclients intended to induce consumers to join the Cosmetique Beauty Club and purchase beauty kits by causing consumers to rely on the deceptive representation that they would receive a "free" gift if they joined the Cosmetique Beauty Club.

49. Valueclick and Webclients' conduct described herein constitutes an unlawful practice under the Consumer Fraud Act, 815 ILCS 501/1, *et seq.*

50. Consumers were damaged by Valueclick and Webclients' false and deceptive conduct.

51. As a direct and proximate cause of Valueclick and Webclients' conduct as alleged herein, Cosmetique has been damaged in an amount to be proven at trial.

52. As required by the Consumer Fraud Act, a copy of this Complaint is being sent to the Illinois Attorney General.

## PRAYER FOR RELIEF

Cosmetique demands judgment against ValueClick and Webclients and each of them jointly and severally as follows:

1. Declaring that each of the ValueClick and Webclients violated the Consumer Fraud Act, 815 ILCS 505/1 *et seq.*;

2. Requiring ValueClick and Webclients to disgorge and remit to Cosmetique all commissions, premiums, fees, charges, compensation and/or revenue they received for or in connection with their false and misleading advertising practices and imposing a constructive trust over all funds traceable to their wrongdoing;

3. Determining and awarding Cosmetique damages sustained as a result of the violations set forth above from Valueclick and Webclients, jointly and severally, and together with interest thereon;

4. Awarding pre-judgment and post-judgment interest as allowed by law;

5. Awarding Cosmetique's costs and expenses for this action, including reasonable attorneys' and experts' fees; and

6. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

DATED:  January 19, 2010                    Respectfully Submitted,

COSMETIQUE, INC.

By:  /s/ Kenneth A. Wexler

Kenneth A. Wexler
Mark R. Miller
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, Illinois  60603
(312) 346-2222 – Telephone
(312) 346-0022 – Facsimile
kaw@wexlerwallace.com
mrm@wexlerwallace.com

Mark J. Tamblyn
WEXLER WALLACE LLP
455 Capitol Mall, Suite 231
Sacramento, California 95814
(916) 492-1100 – Telephone
(916) 492-1124 – Facsimile
mjt@wexlerwallace.com

***Counsel for Plaintiff***